STATE OF NORTH CAROLINA v. MARK STEPHAN PATTERSON

No. COA01-275

(Filed 19 March 2002)

1. **Evidence— limitation on cross-examination—victims' sexual activity**

The trial court did not err in a contributing to the delinquency of a juvenile, taking indecent liberties with a child, second-degree kidnapping, and third-degree sexual exploitation case by refusing to allow defendant to question witnesses concerning the alleged victims' sexual activity involving a codefendant where the codefendant was unavailable, because: (1) there is nothing in the record to indicate what response the witness would have provided to these questions, nor what information further cross-examination would have revealed; (2) the evidence showed that

defendant would not have been helped by this testimony since he was not merely a passive observer when he provided the alcohol, encouraged the victims to remove their clothing and pose for pictures, and attempted to engage in sexual acts with some of the victims; and (3) even though defendant asked the trial court during pretrial discussion for permission to cross-examine these witnesses, defendant failed to request a voir dire hearing at the time he wanted to pursue this line of questioning.

**2. Evidence— defendant's statement—prior crimes or bad acts**

The trial court did not err in a contributing to the delinquency of a juvenile, taking indecent liberties with a child, second-degree kidnapping, and third-degree sexual exploitation case by allowing the prosecutor to publish defendant's statement without redacting the mention of his prior charges, because: (1) the statement had already been offered into evidence and published to the jury without objection and without a motion to suppress; (2) defendant concedes that he was provided with a copy of the statement during the discovery process and that it was properly reviewed at that time; (3) defendant failed to argue plain error; and (4) the trial court cured any alleged error by instructing the jury to disregard that portion of the statement.

**3. Criminal Law— motion for mistrial—publication of defendant's statement without proper redaction**

The trial court did not err in a contributing to the delinquency of a juvenile, taking indecent liberties with a child, second-degree kidnapping, and third-degree sexual exploitation case by denying defendant's motion for a mistrial after defendant objected to the continued reading of defendant's statement by a detective when that objection was sustained but the jury had already been provided with copies of the statement without the improper content having first been redacted, because: (1) defendant failed to properly preserve this issue for appellate review as required by N.C. R. App. P. 10(b)(1); and (2) even if this argument had been properly preserved, the jury was instructed to disregard the portion of the statement not read aloud.

**4. Evidence— prior crimes or bad acts—sexual activity—common scheme or plan**

The trial court did not err in a contributing to the delinquency of a juvenile, taking indecent liberties with a child, second-degree kidnapping, and third-degree sexual exploitation case by allowing

evidence under N.C.G.S. § 8C-1, Rule 404(b) of defendant's prior bad acts and criminal convictions in Delaware including his convictions involving meeting young teenage girls at a skating rink, inviting them to his home for parties, providing drugs and alcohol to these teens at these parties, and photographing them in various stages of undress, because: (1) the current acts are sufficiently similar to the previous acts in Delaware to show a common scheme or plan; and (2) these prior incidents occurring between ten and fifteen years before defendant's trial were not so remote in time as to no longer be more probative than prejudicial.

**5. Evidence— seventeen-year-old videotape—defendant having sex with a minor**

The trial court did not abuse its discretion in a contributing to the delinquency of a juvenile, taking indecent liberties with a child, second-degree kidnapping, and third-degree sexual exploitation case by allowing the jury under N.C.G.S. § 8C-1, Rule 403 to view portions of a seventeen-year-old videotape of defendant having sex with a minor, because: (1) the trial court excluded most of the videotape; and (2) even if there was error, the error was harmless in light of the overwhelming evidence of defendant's guilt.

Appeal by defendant from judgments entered 15 August 2000 by Judge Sanford L. Steelman, Jr. in Rowan County Superior Court. Heard in the Court of Appeals 22 January 2002.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Laura E. Crumpler, for the State.*

*Richard D. Locklear for defendant-appellant.*

HUNTER, Judge.

Mark Stephan Patterson ("defendant") appeals his convictions and sentencing for contributing to the delinquency of a juvenile, taking indecent liberties with a child, second degree kidnapping, and third degree sexual exploitation. We find no error.

The evidence presented at trial tended to establish that the bulk of the crimes of which defendant was convicted involved four girls ages thirteen and fourteen: Sharon Solomon ("Solomon"); Amanda Trull ("Trull"); Amanda Mauney ("Mauney"); and Rebecca Benton ("Benton").

STATE v. PATTERSON

[149 N.C. App. 354 (2002)]

Defendant lived in a mobile home in North Carolina with his friend Tonya Anderson ("Tonya") and often spent time at Kate's Skating Rink in Salisbury, North Carolina, where Tonya worked. Defendant and Tonya would introduce themselves to others at Kate's as brother and sister. They befriended Trull and Solomon, who also frequented Kate's. In April of 1999, Tonya invited Solomon to spend the night with her because defendant was going to be out of town. Solomon invited Trull to accompany her. The original plan was for the three of them to watch movies and drink wine coolers but Trull invited some boys over who also brought alcohol. That night they all sat around talking, drinking, and listening to music. After the boys left, Solomon and Trull spent the night. Defendant returned from Delaware the next day and Solomon and Trull also spent that night at defendant's house.

Trull and Solomon continued to spend more time and nights with defendant and Tonya. On one occasion, when Trull was staying over, defendant climbed into bed, nude, with her and asked for oral sex and began touching her "privates." After she refused and pushed his hand away, they went to sleep. Defendant photographed Trull and Solomon posing in their underwear on numerous occasions and at one point he told Solomon that he liked to get young girls drunk in order to photograph them and have sex with them.

Later that year, defendant and Tonya decided to have a big party. In addition to Solomon and Trull, there were boys at this party, along with Benton and Mauney. Defendant and Tonya provided alcohol and marijuana to the teens. As the young girls consumed alcohol, defendant encouraged them to remove their clothing and pose for pictures in their underwear. Defendant later encouraged Benton and Mauney, both wearing only t-shirts and panties, to simulate lesbian sex acts in the spare bedroom while he took pictures.

A few weeks after this party, Solomon and Trull called the police and defendant and Tonya were arrested. The police executed search warrants of the house and seized numerous photographs of young girls, included Solomon, Trull, Mauney, and Benton, in various stages of undress, consuming alcohol, and in some cases performing simulated sex acts. The police also seized a seventeen year-old videotape of defendant engaging in sexual acts with a fourteen year-old girl.

On 15 August 2000, defendant was convicted on eight (8) counts of contributing to the delinquency of a juvenile, five (5) counts of taking indecent liberties with a child, four (4) counts of second degree

STATE v. PATTERSON

[149 N.C. App. 354 (2002)]

kidnapping, and one (1) count of third degree sexual exploitation. Defendant was sentenced to consecutive sentences of ninety (90) days for the contributing to the delinquency of a juvenile convictions, a minimum of 95 months and a maximum of 115 months for the taking indecent liberties with a child convictions, a suspended sentence of between forty-six (46) and seventy-four (74) months for the second degree kidnapping convictions, and a suspended sentence of between six (6) and eight (8) months for the third degree sexual exploitation conviction. Defendant appeals.

Defendant brings forth five assignments of error on appeal: (1) the trial court erred by refusing to allow defendant to question witnesses concerning the alleged victims' sexual activity involving a co-defendant where the co-defendant was unavailable; (2) reversible error was committed when the prosecutor failed to correct what she knew, or should have known, was inadmissible evidence; (3) reversible error was committed as a consequence of defense counsel's untimely objection to defendant's statement when the statement contained information concerning prior convictions; (4) the trial court erred in allowing the introduction of evidence under N.C. Gen. Stat. § 8C-1, Rule 404(b) (1999) concerning defendant's prior bad acts and criminal convictions while living in Delaware; and (5) defendant was unfairly prejudiced under N.C. Gen. Stat. § 8C-1, Rule 403 (1999) when the trial court allowed the jury to view portions of a seventeen year-old videotape of defendant having sex with a minor. For reasons stated herein, we conclude defendant's trial was free of error.

I.

[1] Defendant first argues that the trial court erred in refusing to allow him to question the State's witnesses concerning the victims' sexual activity with others at the party. Specifically, defendant challenges the trial court's refusal to allow him to cross-examine Detective Tonya Rusher about alleged sexual activity between the victims and other males at the parties. Defendant contends that he was simply a passive observer who took photographs of normal teenage behavior at parties: dancing, drinking, and stripping off their clothing.

During the trial, defendant asked Detective Rusher:

Q. Now, without identifying or revealing the names of the victim, if you could tell us what other young men were charged and what were the charges.

**STATE v. PATTERSON**

[149 N.C. App. 354 (2002)]

[PROSECUTOR]: Objection.

THE COURT: Sustained.

Q. Have the charges against these young men been resolved, been to trial?

A. I believe one.

Q. And what was the disposition to that?

[PROSECUTOR]: Objection.

THE COURT: Sustained.

There is nothing in the record to indicate what response the witness would have provided to these questions, nor what information further cross-examination would have revealed. "An exception to the exclusion of evidence cannot be sustained where the record fails to show what the witness's testimony would have been had he been permitted to testify." *State v. Barts*, 321 N.C. 170, 178, 362 S.E.2d 235, 239 (1987) (citations omitted). In addition, the evidence presented at trial showed that defendant was not merely a passive observer, he provided the alcohol, encouraged the victims to remove their clothing and pose for pictures, and attempted to engage in sexual acts with some of the victims. He also admitted that he liked to get young girls drunk in order to photograph them and to engage in sexual acts with them.

During a pre-trial discussion, defendant did ask the trial court for permission to cross-examine witnesses about possible sexual conduct between the victims and others at the party. The trial court declined to rule at that time and suggested that defendant request a *voir dire* hearing so that the trial court could properly consider the proffered evidence if there came a point where defendant wanted to pursue this line of questioning. Defendant never requested a *voir dire* hearing at the time he wanted to pursue this line of questioning.

Because the record does not indicate what the cross-examination would have revealed, and because the evidence elsewhere tends to show that defendant would not be helped by this testimony, we conclude that defendant was not prejudiced by the denial of opportunity to cross-examine further. *See State v. Lynch*, 337 N.C. 415, 423, 445 S.E.2d 581, 584 (1994) (when there is nothing in the record to indicate what the answers would have been, and it is not apparent that the witness would have answered as the defendant wanted him to answer,

STATE v. PATTERSON

[149 N.C. App. 354 (2002)]

the court cannot rule favorably for the defendant on this question). Defendant also failed to follow the trial court's instruction to request a *voir dire* hearing so that the trial court could properly assess the proffered evidence. This assignment of error is overruled.

## II.

**[2]** Defendant next argues that reversible error was committed when the prosecutor failed to prevent what she knew, or should have known, was inadmissible evidence from being published to the jury. During the trial, Detective Rusher was asked to read a handwritten statement that had been given to Detective Rusher by defendant after he was read his rights. In this statement, defendant mentions his 1986 convictions for contributing to the delinquency of a minor in Delaware. Prior to Detective Rusher's reading of the statement, it was properly admitted into evidence and published to the jury, without objection. When Detective Rusher read "[a]bout mid or late 80's, I was charged with several counts," defendant objected and the trial court sustained the objection and instructed the jury to disregard that portion of the statement in their deliberation. The portion of the statement not read aloud to the jury was:

> About mid or late 80's I was charged with several counts of contributing to the delinquency of a minor. I was also charged with giving kids drugs to take to school & sell and with giving them alcohol. I plead guilty to two counts of contributing to the delinquency of a minor. I got 5 years probation for that.

However, this statement had already been offered into evidence and published to the jury without objection and without a motion to suppress. The only objection came when the statement was being read aloud by Detective Rusher.

Defendant concedes that he was provided with a copy of the statement during the discovery process and that it was properly reviewed at that time. Because defendant allowed this statement to be published to the jury without objection, and does not argue the admission to be plain error, he cannot now say it was error for the statement to be published without first redacting the mention of prior charges. N.C.R. App. P. 10(c)(4).

Even if it were error to provide the jury with the excluded portion of the statement, for the reasons stated in III below, the trial court cured any error by instructing the jury to disregard that portion of the statement. This assignment of error is overruled.

STATE v. PATTERSON

[149 N.C. App. 354 (2002)]

### III.

**[3]** In his next assignment of error, defendant argues that the trial court erred in not granting a mistrial after defendant objected to the continued reading of defendant's statement by Detective Rusher when that objection was sustained but the jury had already been provided with copies of the statement without the improper content having first been redacted. As noted in II above, these unredacted copies were provided to the jury without objection from defendant.

Defendant did not move for a mistrial so the failure of the trial court to grant one is not an error properly preserved for appellate review. *See* N.C.R. App. P. 10(b)(1).

Even if this argument had been properly preserved, the defendant's own cited authority shows that a motion for a mistrial must only be granted if "there occurs an incident of such a nature that it would render a fair and impartial trial impossible under the law." *State v. McCraw*, 300 N.C. 610, 620, 268 S.E.2d 173, 179 (1980) (citation omitted). Even if the publication of the statement was in error, the jury was instructed to disregard the portion of the statement not read aloud. "When a jury is instructed to disregard improperly admitted testimony, the presumption is that it will disregard the testimony." *Id.* at 610, 268 S.E.2d at 179 (defendant's motion for mistrial was properly denied when the trial judge instructed the jury to disregard testimony of a prior arrest). This assignment of error is overruled.

### IV.

**[4]** In his fourth assignment of error, defendant argues that the trial court erred under N.C. Gen. Stat. § 8C-1, Rule 404(b) by allowing the introduction of evidence of defendant's prior bad acts and convictions while living in Delaware. Defendant had been convicted of crimes in Delaware that involved meeting young teenage girls at a skating rink, inviting them to his home for parties, providing drugs and alcohol to these teens at these parties, and photographing them in various stages of undress.

Defendant argues introduction of this evidence violated Rule 404(b) which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, prepara-

tion, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b). Defendant argues that since the identity of defendant was not at issue, identity evidence is not admissible under 404(b). *See State v. White,* 101 N.C. App. 593, 401 S.E.2d 106, *appeal dismissed and disc. review denied,* 329 N.C. 275, 407 S.E.2d 852 (1991). Defendant further argues that this evidence was admitted solely to show that defendant had the propensity or disposition to commit the crime charged. We disagree.

"Rule 404(b) is one of *'inclusion* of relevant evidence of other crimes . . . subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.' " *State v. Faircloth,* 99 N.C. App. 685, 689, 394 S.E.2d 198, 201 (1990) (quoting *State v. Coffey,* 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990)). "[S]uch evidence is admissible as long as it is relevant to any fact or issue other than the defendant's propensity to commit the crime." *State v. Aldridge,* 139 N.C. App. 706, 714, 534 S.E.2d 629, 635, *appeal dismissed and disc. review denied,* 353 N.C. 382, 546 S.E.2d 114 (2000). Here, the trial court allowed the prior bad acts to be admitted under Rule 404(b) "as evidence of the motive of the defendant, the intent of the defendant, and of a common scheme of [sic] plan."

The test for determining whether evidence showing a common scheme or plan is admissible is "whether the incidents establishing the common plan or scheme are sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of N.C.G.S. § 8C-1, Rule 403." *State v. Frazier,* 344 N.C. 611, 615, 476 S.E.2d 297, 299 (1996). In the present case, the similarities between the incidents involving the current crimes and the actions in Delaware are sufficient to establish a common scheme or plan. The trial court allowed the evidence to be admitted after holding a *voir dire* hearing. At this *voir dire* hearing, the trial court made extensive findings of fact concerning defendant's prior acts in Delaware, including:

a. In the 1980's and early 1990's the defendant resided in the State of Delaware. The defendant helped to start a roller skating club known as the "Aces". The defendant used the skating club to meet underage females.

STATE v. PATTERSON

[149 N.C. App. 354 (2002)]

b. . . . On weekends, there would be parties at the home of the defendant. The defendant provided liquor, marijuana, and caffeine pills to girls who were minors. . . . There would be girls at these parties who were between the ages of 13 and 28 years of age. Strip poker was played at these parties, and the defendant would take pictures of girls during these games, in various stages of undress. . . . In 1986 the defendant . . . [was] convicted of multiple counts of contributing to the delinquency of a juvenile in the State of Delaware arising out of this conduct. Despite this conviction, the parties at the residence of the defendant continued.

c. . . . Following his separation [from his wife], the parties at the residence of the defendant continued and increased, with more marijuana and nudity.

. . .

e. The defendant kept a log of his sexual conquests, beginning in 1974, listing the ages of the girls, and the type of sex that he had with them.

In the present case, defendant met the victims at a skating rink, invited them to his home for parties where alcohol and drugs were provided, and then proceeded to take photographs of the victims in varying stages of undress. Defendant also attempted to engage in sexual activities with at least one of the victims. We hold that the current acts are sufficiently similar to the previous acts in Delaware.

The second part of the test for admissibility is whether or not these prior incidents were so remote in time as to no longer be more probative than prejudicial. *Id.* In the present case, defendant's prior crimes and bad acts took place over a number of years in Delaware and again in North Carolina. As our Supreme Court noted in *State v. Shamsid-Deen*, 324 N.C. 437, 379 S.E.2d 842 (1989): ·

While a lapse of time between instances of sexual misconduct slowly erodes the commonality between acts and makes the probability of an ongoing plan more tenuous, . . . the continuous execution of similar acts throughout a period of time has the opposite effect. When similar acts have been performed continuously over a period of years, the passage of time serves to prove, rather than disprove, the existence of a plan.

STATE v. PATTERSON

[149 N.C. App. 354 (2002)]

*Id.* at 445, 379 S.E.2d at 847. We hold that the prior bad acts, occurring in Delaware between ten and fifteen years before defendant's trial, were not too remote to be considered as relevant evidence of defendant's common scheme or plan to meet young girls at a skating rink, provide them drugs and alcohol, and photograph them in varying stages of undress for the purposes of sexual gratification. *See State v. Miller*, 142 N.C. App. 435, 543 S.E.2d 201 (2001) (prior convictions dating back sixteen years are admissible).

We also find that the trial court did not abuse its discretion in finding that this evidence of a common scheme or plan was more probative than prejudicial under the balancing test of Rule 403. *See State v. Coffey*, 326 N.C. 268, 389 S.E.2d 48. This assignment of error is overruled.

V.

[5] Defendant's final argument is that the trial court erred in allowing portions of a seventeen year-old videotape of defendant engaging in sexual activity with a minor to be played for the jury. Defendant argues that any probative value of the videotape is outweighed by its prejudicial effect upon him. *See* N.C. Gen. Stat. § 8C-1, Rule 403.

"Evidence which is probative of the State's case necessarily will have a prejudicial effect upon the defendant; the question is one of degree." *Coffey*, 326 N.C. at 281, 389 S.E.2d at 56 (citing *State v. Mercer*, 317 N.C. 87, 94, 343 S.E.2d 885, 889 (1986)). The decision to admit or exclude evidence under Rule 403 is left to the discretion of the trial court and will only be disturbed upon a showing of abuse of discretion. *Id.* In this case, the trial court excluded most of the videotape, only allowing portions to be shown to the jury. The trial court did not abuse its discretion in allowing portions of the videotape to be shown to the jury.

Even if the admission of the videotape were determined to be error, it was harmless error. In order to show prejudicial error, defendant must show that a different result would have been reached at trial if the evidence had not been admitted. N.C. Gen. Stat. § 15A-1443(a) (1999). In light of the overwhelming evidence against defendant, it is unlikely that the jury would not have convicted had they not seen the portions of this videotape that the trial court allowed. This assignment of error is overruled.

**CAIN v. N.C. DEP'T OF TRANSP.**

[149 N.C. App. 365 (2002)]

No error.

Judges GREENE and TYSON concur.